**KUZYK LAW, LLP**
Michael D. Braun (SBN 167416)
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Facsimile: (213) 401-0311
Email: mdb@kuzykclassactions.com

**LAW OFFICES OF PETER N. WASYLYK**
Peter N. Wasylyk (pro hac vice pending)
1307 Chalkstone Avenue
Providence, RI 02908
Telephone: (401) 831-7730
Facsimile: (401) 861-6064
Email: pnwlaw@aol.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ANNETTE ALARCON and CONNI RANDWULF, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br>**v.**<br><br>**WM. BOLTHOUSE FARMS, INC.**<br><br>**Defendant** | **CASE NO.:**<br><br>**<u>CLASS ACTION</u>**<br><br>**COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF** |

Plaintiffs Annette Alarcon and Conni Randwulf ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action against WM. Bolthouse Farms, Inc. ("Bolthouse" or "Defendant"), and on the basis of personal knowledge, information and belief, and the investigation of counsel, allege as follows:

## INTRODUCTION

1. This is a proposed class action on behalf of a California class (collectively, "Class") of consumers seeking redress for Defendant's deceptive practices associated with the advertising, labeling, and sale of its Bolthouse Farms Smoothies which claim to contain NO Artificial Preservatives ("Product" or "Beverage").[1]










[1] Class Products include: Golden Goodness, Blue Goodness, Green Goodness and Protein Plus




2. The Product's label makes several clean label claims designed to tout its health benefits. Displayed on the label is the assurance that consumers should "FEEL GOOD ABOUT WHAT'S INSIDE," accompanied by a badge claiming the Product contains "NO ARTIFICIAL PRESERVATIVES," among other 'free-from' claims. Bolthouse makes this claim to reassure consumers that its Products are wholesome, clean-label beverages made without synthetic additives.

3. Contrary to the representation on the Products' labels – that it contains "No Artificial Preservatives" – the ingredient deck reveals the inclusion of ascorbic acid, a synthetically manufactured chemical preservative, which renders the representation false, misleading, and in violation of the law.










4. Defendant knows that consumers are willing to pay more for products that are free of artificial preservatives because they perceive them to be a healthier, more natural alternative to similar products that contain synthetic chemical preservatives. Indeed, Defendant advertises the Products with the clear intention that consumers rely on the representation made on the packaging that the Products contain "No Artificial Preservatives."

5. Reasonable consumers such as Plaintiffs do not have specialized knowledge necessary to identify ingredients in the Products as being inconsistent with Defendant's advertised claim of "No Artificial Preservatives." This is even more so given Defendant has chosen to obfuscate the existence of a synthetic preservative by characterizing the ascorbic acid merely as "Vitamin C" and failing to disclose that it is

manufactured, not naturally derived, and that it acts as a chemical preservative in the Products.

6. By falsely labeling the Products as having "No Artificial Preservatives," Defendant has profited from consumers' preference for offerings that are perceived to be healthier clean label products.

7. Throughout the applicable Class Period (defined below), Defendant has falsely represented the true nature of its Products, and as a result of this false and misleading labeling, was able to sell these Products to thousands of unsuspecting consumers throughout California.

8. Plaintiffs allege that Defendant's conduct is in breach of warranty, violates California's Business and Professions Code § 17200, et. seq., California's Business & Professions Code § 17500, et. seq., California Civil Code § 1750, et seq., and is otherwise grounds for restitution on the basis of quasi-contract/unjust enrichment.

## **JURISDICTION AND VENUE**

9. Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Plaintiff Randwulf is a resident of Sacramento, California, and Plaintiff Alarcon is a resident of Lancaster, California. Defendant Bolthouse is headquartered in Bakersfield, California. The amount in controversy exceeds $5,000,000 for the Plaintiffs and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiffs and members of the putative Class, and the profits reaped by Defendant from its transactions with Plaintiffs and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

10. Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of occurred and affected persons and entities located in this judicial district. Defendant

has received substantial compensation for affected transactions and business activity in this judicial district.

## PARTIES

11. Plaintiff Conni Randwulf is a resident of Sacramento, California.

12. Plaintiff Randwulf regularly purchased Bolthouse Farms' Blue and Green Goodness beverages over the past three years, principally from the Bel Air Market located in Rancho Cordova, California.

13. Plaintiff Randwulf made her purchases after reading and relying on Defendant's Product label.

14. Plaintiff Randwulf believed the representations on the Product's label that, among other things, it contained "No Artificial Preservatives."

15. Plaintiff Randwulf believed that Defendant lawfully marketed and sold the Product.

16. Plaintiff Randwulf relied on Defendant's labeling and was misled thereby.

17. Plaintiff Randwulf would not have purchased the Product, or would have purchased the Product on different terms, had she known the truth.

18. Plaintiff Randwulf was injured in fact and lost money as a result of Defendant's improper conduct.

19. Plaintiff Annette Alarcon is a resident of Lancaster, California.

20. Plaintiff Alarcon purchased Bolthouse Farms' Green Goodness regularly over the past three years from Walmart and Ralphs locations in Lancaster, California.

21. Plaintiff Alarcon made her purchases after reading and relying on Defendant's Product label.

22. Plaintiff Alarcon believed the representations on the Product's label that, among other things, it contained "No Artificial Preservatives."

23. Plaintiff Alarcon believed that Defendant lawfully marketed and sold the Product.

24. Plaintiff Alarcon relied on Defendant's labeling and was misled thereby.

25. Plaintiff Alarcon would not have purchased the Product, or would have purchased the Product on different terms, had she known the truth.

26. Plaintiff Alarcon was injured in fact and lost money as a result of Defendant's improper conduct.

27. Plaintiffs and members of the Class have been economically damaged by their purchases of the Products because the advertising for the Products was deceptive and/or misleading under California laws and the Products are misbranded; therefore, the Products are worth less than what Plaintiffs and members of the Class paid for them and/or Plaintiffs and members of the Class did not receive what they reasonably intended to receive.

28. Defendant WM. Bolthouse Farms, Inc. is headquartered in Bakersfield, California. Bolthouse manufactures, markets, and sells the Bolthouse Farms-branded juice and juice smoothie Products at issue in this action, which are sold at grocery, retail, and club stores throughout California and the United States.

## GENERAL ALLEGATIONS

### A. Ascorbic Acid is a Preservative

29. The federal Food Drug & Cosmetic Act ("FDCA") defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5). "A food to which a chemical preservative(s) is added shall…. bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., "preservative," "to retard spoilage," "a mold inhibitor," "to help protect flavor," or "to promote color retention." 21 C.F.R. §101.22(j).

30. Chemical preservation is the process of adding ingredients to a food for the purpose of preventing potential damage from oxidation, rancidity, microbial growth, or other undesirable changes. Chemical preservatives may be both natural or synthetic and function one of several ways — (a) as an antimicrobial agent to destroy bacteria or inhibit the growth of mold on foods; (b) as an antioxidant to inhibit oxidation and resulting rancidity; and (c) as a chelating agent which binds metal ions in certain foods to prevent oxidation.

31. Ascorbic acid is a preservative within the meaning of 21 C.F.R. §101.22. Indeed, in a consumer facing publication, *Food Ingredients and Colors*, the Food and Drug Administration ("FDA") unequivocally identifies "ascorbic acid" as a preservative.[2]

| **Types of Ingredients** | **What they Do** | **Examples of Uses** | **Names Found on Product Labels** |
|---|---|---|---|
| Preservatives | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | **Ascorbic acid,** citric acid, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

[2] *Food Ingredients and Colors*, International Food Information Council Foundation and U.S. Food and Drug Administration, specifically identifies the following as preservatives: **ascorbic acid**, citric acid, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E). Available at https://www.fda.gov/files/food/published/Food-Ingredients-and-Colors-%28PDF%29.pdf (last visited July 25, 2026).

32. Ascorbic acid is further identified as a chemical preservative under Title 21, Chapter 1, Subchapter B, Part 182 Subpart D (21 C.F.R. §182.3013), a fact reaffirmed by in a Technical Report United States Department of Agriculture Agricultural Marketing Service. *See e.g.*, “Ascorbic acid is often included in food products as a preservative. Preservative applications of ascorbic acid make use of its antioxidant properties to prevent discoloration in a range of processed products” at p. 13 lines 107-115.[3]

33. Finally, in a Warning Letter issued to Chiquita Brands International, Inc. and Fresh Express, Incorporated, October 6, 2010, the FDA made clear that ascorbic acid was a preservative and needed to be identified as such. “The "Pineapple Bites" and "Pineapple Bites with Coconut" products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservatives ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 CFR §101.22.”[4]

34. Ascorbic acid’s primary use is as a preservative, despite potentially having additional functions.[5] It functions as a preservative in the Products, regardless of Defendant’s subjective purpose(s) for adding it to the Products, and regardless of any other functions ascorbic acid may perform (*e.g.,* vitamin C).[6]

[3] Ascorbic Acid, Technical Report United States Department of Agriculture Agricultural Marketing Service, National Organic Program, July 17, 2019. Available at https://www.ams.usda.gov/sites/default/files/media/AscorbicAcidTRFinal7172019.pdf (last visited July 25, 2026).

[4] http://fda-warning-letters.blogspot.com/2010/10/fresh-express-incorporated-10610.html (last visited July 25, 2026).

**B. The Ascorbic Acid Used in Defendant's Products Is an Artificial Preservative**

35. Although ascorbic acid is naturally produced in nearly all plants and many animal species, its reactive nature makes isolation of the substance from natural sources challenging, which has resulted in all commercial ascorbic acid being synthetically derived." [7] The United States Department of Agriculture's Agricultural Marketing Service, National Organic Program ("USDA NOP"), has unequivocally stated that "all commercial sources of pure ascorbic acid are synthetically produced" and has expressly classified ascorbic acid as a "Synthetic[]" under 7 C.F.R. § 205.605. *Id.*

36. Ascorbic acid used in commercial food and beverage products is manufactured either through a multi-step chemical synthesis from D-glucose developed in the 1930s or, more commonly, through a fermentation-based process in which D-glucose is converted by microorganisms in successive fermentation steps into 2-keto-L-gulonic acid, an intermediate compound not found in significant quantities in nature.[8] That intermediate is then chemically converted into ascorbic acid through an acid-catalyzed lactonization step. According to the USDA NOP's technical evaluation of the substance, it is this final chemical, acid-catalyzed conversion step — not merely the use of microorganisms in the upstream fermentation that results in the substance's classification as "synthetic" under USDA guidance. *Id.*

---

[7] U.S. Dep't of Agric., Agric. Mktg. Serv., Nat'l Organic Program, *Ascorbic Acid: Technical Evaluation Report — Handling/Processing* (July 17, 2019). Available at https://www.ams.usda.gov/sites/default/files/media/AscorbicAcidTRFinal7172019.pdf.

[8] USDA NOP, Technical Evaluation Report: Vitamins B1, C and E — Crops (Apr. 1, 2015), pp. 8–9. Available at https://www.ams.usda.gov/sites/default/files/media/Vitamins%20B1-C-E%20TR%202015.pdf (last visited July 25, 2026).

37. By all accounts, manufactured ascorbic acid is artificial. At its most basic level, the dictionary definition of the term artificial (*i.e.,* something made or produced by human beings through industrial processes, as opposed to occurring naturally) squarely applies. *e.g.,* "made, produced, or done by humans especially to seem like something natural;"[9] "made by people, often as a copy of something natural."[10] Ascorbic acid plainly qualifies as artificial under any common understanding of the term.

38. Defendant Bolthouse does not, and given the industrial scale of its operations and of the broader food and beverage manufacturing industry, cannot source the ascorbic acid used in its Products through extraction from plants or animals. Like virtually all commercial food and beverage manufacturers, Bolthouse uses industrially manufactured, synthetic ascorbic acid produced through the fermentation and chemical conversion process described above. The ascorbic acid in Defendant's Products is artificial.

**C. Ascorbic Acid Operates as a Preservative in Defendant's Products**

39. Preservatives slow product spoilage caused by mold, air, bacteria, fungi or yeast (antimicrobials) and slow or prevent changes in flavor and delay rancidity (antioxidants). Ascorbic acid is also used as an antioxidant to protect the sensory and nutritional properties of foods. As an anti-browning agent, it can inhibit the browning of vegetables and fruits caused by oxidation. [11]

---

[9] Merriam-Webster, available at https://www.merriam-webster.com/dictionary/artificial?src=search-dict-box (last visited July 23, 2026).

[10] Cambridge Dictionary, available at https://dictionary.cambridge.org/us/dictionary/english/artificial (last visited July 23, 2026).

[11] Yin X, Chen K, Cheng H, Chen X, Feng S, Song Y, Liang L. *Chemical Stability of Ascorbic Acid Integrated into Commercial Products: A Review on Bioactivity and Delivery Technology*. Antioxidants (Basel), January 11, 2022. Available at

40. The FDA broadly defines a food additive as any substance added to food. More specifically, the term refers to "any substance the intended use of which results or may reasonably be expected to result — directly or indirectly — in its becoming a component or otherwise affecting the characteristics of any food."[12] This definition includes any substance used in the production, processing, treatment, packaging, transportation or storage of food. The ascorbic acid identified in the ingredient list of Defendant's Products is not naturally occurring, but rather a chemical preservative specifically added as part of the Products' formulation.

41. Moreover, ascorbic acid is effective as, and functions as, a preservative in Defendant's Products even when used in relatively low quantities. Thus, even if ascorbic acid is present in the Products at low quantities, Defendant's "No Artificial Preservatives" representation is false, deceptive, and misleading because: (1) the Products contain added ascorbic acid, which is undeniably a synthetic, manufactured chemical preservative; and (2) the Products contain ascorbic acid in quantities sufficient for it to have a tendency to preserve and to function as a preservative in the Products.

42. To this end, Plaintiffs conducted an independent chemical analysis of one of Defendant's Products to determine the Product's acidity as reflected in terms of pH, and whether ascorbic acid exists in sufficient amounts in the Product to function as a preservative or otherwise has the tendency to preserve.

43. The measured pH of the Product was 3.70, making it a high-acid food. High-acid foods have a pH below 4.6, which is acidic enough to prevent the growth of Clostridium botulinum and other pathogens. The measured ascorbic acid

---

https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8773188/#:~:text=Ascorbic%20acid%20is%20also%20used,and%20fruits%20caused%20by%20oxidation (last visited July 25, 2026)

concentration in the Product was 0.597 mg/mL (3.39 mM). In pure water, this concentration of ascorbic acid would have a pH of approximately 3.3. Accordingly, the amount of ascorbic acid present is sufficient to acidify and otherwise contribute to the preservation of the Product. As such, ascorbic acid has a tendency to act as, and does act as, a preservative in this Product.

**C. Consumer Demand For Clean Label Products**

44. The clean label movement has been called "the largest shift in American food habits since World War II."[13] The term encompasses many things but is most often associated with foods that are natural, healthy, and devoid of additives and preservatives.[14]

45. By representing the Product as having "No Artificial Preservatives," Defendant seeks to capitalize on consumer preference for clean label products. Indeed, "[foods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health."[15] "84 percent of Americans buy "free-from" foods because they believe them to be more natural or less processed." Among such consumers, no artificial preservatives ranks "[a]mong the top claims… deem[ed] most important." *Id.*

46. In a survey undertaken by L.E.K, around 1600 consumers were asked which claims were the most important to them when buying food and drink products.

---

[13] *Clean Labels, Public Relations or Public Health*, Center For Science in the Public Interest (2017), available https://www.cspinet.org/sites/default/files/2022-03/Clean%20Label%20report.pdf (last visited July 25, 2026).

[14] *Clean label trend is evolving - consumers still willing to pay a price premium*, Valio, May 29, 2023. Available at https://www.valio.com/food-solutions-for-companies/articles/clean-label-trend-is-evolving-and-consumers-willing-to-pay-a-price-premium/ (last visited July 25, 2026).




Results indicated the most popular claim to be "no artificial ingredients" followed closely by a claim that a product contained "no preservatives.[16]

47. The representation "No Artificial Preservatives" falls squarely within the realm of consumers' desire for clean label products devoid of added unnatural and/or processed ingredients.

48. By failing to properly label its Products, Defendant has misled and deceived consumers in violation of the laws pled herein.

49. As a result of Defendant's unlawful and deceptive conduct, Plaintiffs and members of the Class have been harmed.

## NO ADEQUATE REMEDY AT LAW

50. Plaintiffs and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

51. Broader Statutes of Limitations. The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought

[16] L.E.K. Consulting, *How the Clean-Label Megatrend Is Changing the Food Ingredients Landscape*, Vol XXI, Issue 74, November 18, 2019. Available at https://www.lek.com/insights/ei/clean-label-food-ingredients (last visited July 25, 2026).

under the UCL, which is one year longer than the statutes of limitations for damages claims under the CLRA.

52. Broader Scope of Conduct. The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. The UCL creates a cause of action for violations of other laws (*e.g.,* Sherman Law), which does not require, among other things, that a reasonable consumer would have been deceived in order to establish a violation. Thus, Plaintiffs and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (*e.g.,* the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

53. Injunctive Relief to Cease Misconduct and Dispel Misperception. Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products with the challenged representations. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm).

54. Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Product that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Product's challenged representations is not true and providing accurate information about the Product's true nature; and/or requiring prominent qualifications and/or disclaimers on the Product's front label concerning the Product's true nature.

55. An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages).

56. Procedural Posture—Incomplete Discovery & Pre-Certification. Lastly, this is an initial pleading in this action and discovery has not yet commenced. No class has been certified. No expert discovery has commenced. The completion of fact and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiffs' individual claims and any certified class. Plaintiff therefore reserves her right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## ECONOMIC INJURY

57. Plaintiffs sought to buy Products that were lawfully labeled, marketed, and sold.

58. Plaintiffs saw and relied on Defendant's misleading labeling of its Products.

59. Plaintiffs believed that the purchased Products contained no artificial preservatives.

60. Plaintiffs believed that the Products were lawfully marketed and sold.

61. In reliance on the claims made by Defendant regarding the qualities of its Products, Plaintiffs paid a price premium.

62. As a result of their reliance on Defendant's misrepresentations, Plaintiffs received Products that contained ingredients which they reasonably believed the Products did not contain.

63. Plaintiffs received Products that were unlawfully marketed and sold.

64. Plaintiffs lost money and thereby suffered injury as they would not have purchased these Products and/or paid as much for them absent the misrepresentation.

65. Defendant knows that the claim "No Artificial Preservatives" is material to a consumer's purchasing decision.

66. Plaintiffs altered their position to their detriment and suffered damages in an amount equal to the amounts they paid for the Products they purchased, and/or in additional amounts attributable to the deception.

67. By engaging in the false and deceptive conduct alleged herein, Defendant reaped, and continues to reap financial benefits in the form of sales and profits from its Products.

68. Plaintiffs, however, would be willing to purchase products labeled as "No Artificial Preservatives" again in the future, including Defendant's Product, should they be able to rely with any confidence on Defendant's marketing as truthful and not deceptive.

69. However, Plaintiffs will not be able to purchase Defendant's Products in the future, even though Plaintiffs would like to, since simply viewing the ingredient list on Defendant's Products that displays the wording "No Artificial Preservatives" on the label may not be enough to prevent Plaintiffs from being deceived by Defendant's Products, since it will not afford Plaintiffs the opportunity to quickly and easily view the ingredient list before purchasing the Products to determine whether any of the ingredients in the Products are preservatives, especially because Plaintiffs, as reasonable consumers, do not have the scientific or encyclopedic knowledge to view all the ingredients identified on the ingredient list to determine whether a particular ingredient is a preservative, let alone whether that preservative is synthetic or artificial. Moreover, Plaintiffs do not have access to Defendant's ingredient formulations to properly identify whether a particular ingredient is a preservative, much less whether it tends to preserve and/or has a preservative effect.

## CLASS ACTION ALLEGATIONS

70. Plaintiffs bring this action on behalf of themselves and on behalf of classes of all others similarly situated consumers defined as follows:

a. **California:** All persons in California who purchased the Class Products in California during the Class Period. [17]

b. **Class Period** is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.

71. Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4).

72. Excluded from the Classes are: (i) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

73. Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

74. There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

75. Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

a. Whether Defendant marketed, packaged, or sold the Class Products to Plaintiff and those similarly situated using false,

---

[17] The statute of limitations for Plaintiffs' claims under California Civil Code § 1750, *et seq*. and for unjust enrichment is 3 years. Accordingly for these claims the Class Period begins 3 years from the date of the initial filing to the present. Plaintiff's claims under California's Business and Professions Code § 17200, *et. seq.,* California's Business & Professions Code § 17500, *et. seq.,* and for breach of express warranty have a statute of limitations of 4 years. Accordingly the Class Period for these claims begins 4 years from the date of the initial filing to the present.

misleading, or deceptive statements or representations;

b. Whether Defendant omitted or misrepresented material facts in connection with the sales of their Products;

c. Whether Defendant participated in and pursued the common course of conduct complained of herein;

d. Whether Defendant has been unjustly enriched as a result of their unlawful business practices;

e. Whether Defendant's actions violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, et seq. (the "UCL");

f. Whether Defendant's actions violate the False Advertising Law, Cal. Bus. & Prof. Code §§17500, et seq. (the "FAL");

g. Whether Defendant's actions violate the Consumers Legal Remedies Act, Cal. Civ. Code §§1750, et seq. (the "CLRA");

h. Whether Defendant's actions constitute breach of express warranty;

i. Whether Defendant should be enjoined from continuing the above-described practices;

j. Whether Plaintiffs and members of the Class are entitled to declaratory relief; and

k. Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

76. Plaintiffs' claims are typical of the claims of the Class, in that Plaintiffs are consumers who purchased Defendant's Product. Plaintiffs are no different in any relevant respect from any other Class member who purchased the Product, and the relief sought is common to the Class.

77. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent,

and they have retained counsel competent and experienced in conducting complex class action litigation. Plaintiffs and their counsel will adequately protect the interests of the Class.

78. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member will likely be relatively small, especially given the cost of the Products at issue and the burden and expense of individual prosecution of complex litigation necessitated by Defendant's conduct. Thus, it would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Moreover, even if members of the Class could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

79. In the alternative, the Class may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to each Class.

80. The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Violation of Breach of Express Warranty

81. Plaintiffs incorporate each and every allegation contained in the paragraphs above as if rewritten herein.

82. Plaintiffs' express warranty claims are based on violations of Cal. Com. Code §2313.

83. Defendant made express warranties to Plaintiffs and members of the Class that the Products they purchased contained no artificial preservatives.

84. The express warranties made to Plaintiffs and members of the Class appear on every Product label. This warranty regarding the nature of the Product marketed by Defendant specifically relates to the goods being purchased and became the basis of the bargain.

85. Plaintiffs and Class members purchased the Products in the belief that they conformed to the express warranties that were made on the Products' labels.

86. Defendant breached the express warranties made to Plaintiffs and members of the Class by failing to supply goods that conformed to the warranties it made. As a result, Plaintiffs and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

87. Plaintiffs and the members of the Class paid money for the Products. However, Plaintiffs and the members of the Class did not obtain the full value of the advertised Products. If Plaintiffs and other members of the Class had known of the true nature of the Products, they would not have purchased them or paid less for them. Accordingly, Plaintiffs and members of the Class have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

88. Plaintiffs and Class members are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

## SECOND CAUSE OF ACTION

**Unlawful Business Practices**
**Violation of The Unfair Competition Law ("UCL")**
**Bus. & Prof. Code §§17200, *et seq*.**
**(On behalf of the California Class)**

89. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

90. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

91. A business act or practice is "unlawful" if it violates any established state or federal law.

92. Defendant's acts, omissions, misrepresentations, practices, and/or non-disclosures concerning the Products alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§301, et seq. and its implementing regulations, including, at least, the following sections:

a. 21 U.S.C. §343(a), which deems food misbranded when its labeling contains a statement that is false or misleading in any particular;
b. 21 C.F.R. §102.5(a)-(d), which prohibits the naming of foods so as to create an erroneous impression about the presence or absence of ingredient(s) or component(s) therein;
c. 21 U.S.C. §§331and 333, which prohibits the introduction of misbranded foods into interstate commerce.

93. California has expressly adopted federal labeling requirements as its own pursuant to the Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"), the Sherman Law, which provides that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant

to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state." Cal. Health & Safety Code § 110100.

94. Each of Defendant's violations of federal law and regulations violates California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"), including, but not limited to, the following sections:

95. Section 110100 (adopting all FDA regulations as state regulations);

96. Section 110290 ("In determining whether the labeling or advertisement of a food . . . is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account");

97. Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food. . . . An advertisement is false if it is false or misleading in any particular");

98. Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food . . . that is falsely advertised");

99. Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded");

100. Section 110400 ("It is unlawful for any person to receive in commerce any food . . . that is falsely advertised or to deliver or proffer for delivery any such food . . . ."); and

101. Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular").

102. Each of the challenged omissions, statements, and actions by Defendant violate the FDCA, and the Sherman Law, and, consequently, violates the "unlawful" prong of the UCL.

103. Defendant's conduct is further "unlawful" because it violates California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq. (the "FAL"),

California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq. (the "CLRA"), and breaches express warranty, as discussed in the claims above and below.

104. By committing the unlawful acts and practices alleged above, Defendant has engaged, and continue to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

105. Through their unlawful acts and practices, Defendant has obtained, and continue to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an order is not granted.

106. In accordance with California Business & Professions Code section 17203, and as Plaintiff lacks an adequate remedy at law, she seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

## THIRD CAUSE OF ACTION

**Unfair Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq*.**

107. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

108. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

109. A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

110. Defendant has violated, and continue to violate, the "unfair" prong of the UCL through their misleading description of the Products. The gravity of the harm to members of the Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications, or motives of Defendant for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Defendant engaged, and continued to engage, in unfair business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

111. Through its unfair acts and practices, Defendant obtained, and continue to unfairly obtain, money from members of the Class. As such, Plaintiff has been injured and requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, to disgorge the profits Defendant made on their Products, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

112. In accordance with California Business & Professions Code section 17203, and as Plaintiff lacks an adequate remedy at law, she seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

## FOURTH CAUSE OF ACTION

**Fraudulent Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq*.**

113. Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

114. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

115. A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

116. Defendant's acts and practices of mislabeling its Products as containing "No Artificial Preservatives" when, in fact, they contain a synthetic chemical preservative, constitute a fraudulent business practice likely to deceive members of the consuming public.

117. As a result of the conduct described above, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendant has been unjustly enriched by the profits it has obtained from Plaintiff and the Class from the purchases of its Products.

118. Through its fraudulent acts and practices, Defendant has improperly obtained, and continue to improperly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the Class, to disgorge the profits Defendant has made, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

119. In accordance with California Business & Professions Code section 17203, and as Plaintiffs lack an adequate remedy at law, they seek an order enjoining

Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

## FIFTH CAUSE OF ACTION

### False Advertising
### Violation of California Business & Professions Code §§ 17500, *et seq*.

120. Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

121. Defendant uses advertising and packaging to sell its Products. Defendant disseminates advertising regarding its Products which by their very nature are deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§17500, *et seq.* because those advertising statements contained on the labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

122. In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§17500, *et seq*.

123. The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§17500, *et seq*.

124. Through their deceptive acts and practices, Defendant has improperly and illegally obtained money from Plaintiffs and the members of the Class. As such, Plaintiffs request that this Court cause Defendant to restore this money to Plaintiffs and the members of the Class, and to enjoin Defendant from continuing to violate California Business & Professions Code §§17500, et seq., as discussed above. Otherwise, Plaintiffs and those similarly situated will continue to be harmed by Defendant's false and/or misleading advertising.

125. Pursuant to California Business & Professions Code §17535, Plaintiffs seek an Order of this Court ordering Defendant to fully disclose the true nature of its misrepresentations. Plaintiffs additionally request an Order: (1) requiring Defendant to disgorge its ill-gotten gains, (2) award full restitution of all monies wrongfully acquired by Defendant, and (3) interest and attorneys' fees. Plaintiffs and the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

126. As a result, and as they lack an adequate remedy at law, Plaintiff and the Class are entitled to equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched, and pray for relief as set forth below.

## SIXTH CAUSE OF ACTION

### Violation of the Consumers Legal Remedies Act
### California Civil Code §§ 1750, *et seq*.

127. Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

128. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§1750, *et seq*. (the "CLRA").

129. Plaintiffs and each member of the proposed Class are "consumers" within the meaning of Civil Code §1761(d).

130. The purchases of the Products by consumers constitute "transactions" within the meaning of Civil Code §1761(e) and the Products constitute "goods" within the meaning of Civil Code §1761(a).

131. Defendant has violated, and continue to violate, the CLRA in at least the following respects:

a. §1770(5) pertaining to misrepresentations regarding the characteristics of goods sold—specifying that misleading representations regarding ingredients violate the CLRA;

b. §1770(7) pertaining to misrepresentations regarding the standard, quality, or grade of goods sold; and

c. § 1770(9) pertaining to goods advertised with the intent not to provide what is advertised.

132. Defendant knew, or should have known, that the labeling of its Products violated consumer protection laws, and that these statements would be relied upon by Plaintiffs and the members of the Class.

133. The representations were made to Plaintiffs and all members of the Class. Plaintiffs relied on the accuracy of the representations on Defendant's labels, which formed a material basis for their decision to purchase the Products. Moreover, based on the very materiality of Defendant's misrepresentations uniformly made on or omitted from their Product labels, reliance may be presumed or inferred for all members of the Class.

134. Defendant carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiffs and the Class, and as a result, Plaintiffs and the Class have suffered an ascertainable loss of money or property.

135. Plaintiffs and the members of the Class request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code §1780(a)(2). Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Defendant's Products will be damaged by their acts and practices in the same way as have Plaintiffs and the members of the proposed Class.

136. In conjunction with this Complaint, Plaintiffs will serve a CLRA demand pursuant to Civil Code §1782, notifying Defendant of the conduct described herein

and that such conduct is in violation of particular provisions of Civil Code §1770. If Defendant fails to take corrective action within thirty days, Plaintiffs will amend the Complaint to seek the full measure of damages available under Civil Code §1780(a).

137. Plaintiffs and the members of the Class request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts, and practices alleged above pursuant to California Civil Code §1780(a)(2).

## SEVENTH CAUSE OF ACTION

### Restitution Based On Quasi-Contract/Unjust Enrichment

138. Plaintiffs incorporate each and every allegation contained in the paragraphs above as if rewritten herein.

139. Plaintiffs plead this cause of action in the alternative.

140. Defendant's conduct in enticing Plaintiffs and the Class to purchase its Products with false and misleading packaging is unlawful because the statements contained on the Defendant's Product labels are untrue.

141. Defendant took monies from Plaintiffs and the Class for these Products and has been unjustly enriched at the expense of Plaintiffs and the Class as a result of its unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiffs and the Class. It is against equity and good conscience to permit Defendant to retain the ill-gotten benefits received from Plaintiffs and Class members.

142. As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

## PRAYER FOR RELIEF

THEREFORE, Plaintiff, on behalf of herself and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A. An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs be appointed Class Representatives, and Plaintiffs' counsel be appointed Lead Counsel for the Class.

B. Restitution in such amount that Plaintiffs and all members of the Class paid to purchase Defendant's Products or restitutionary disgorgement of the profits Defendant obtained from those transactions, for Causes of Action for which they are available.

C. Compensatory damages for Causes of Action for which they are available.

D. Statutory penalties for Causes of Action for which they are available.

E. Punitive Damages for Causes of Action for which they are available.

F. A declaration and Order enjoining Defendant from marketing and labeling its Products deceptively, in violation of laws and regulations as specified in this Complaint.

G. An Order awarding Plaintiffs their costs of suit, including reasonable attorneys' fees and pre and post judgment interest.

H. An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendant as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein.

I. Such other and further relief as may be deemed necessary or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all causes of action or issues so triable.

DATED: August 5, 2026

Respectfully submitted,

Michael D. Braun
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Email: mdb@kuzykclassactions.com

Peter N. Wasylyk (pro hac vice pending)
**LAW OFFICES OF PETER N. WASYLYK**
1307 Chalkstone Avenue
Providence, RI 02908
Telephone: (401) 831-7730
Facsimile: (401) 861-6064
Email: pnwlaw@aol.com

*Counsel for Plaintiffs*